RANDY S. GROSSMAN
United States Attorney
ALEXANDER KRISTOFCAK
California Bar No. 347704
Assistant United States Attorneys
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9741
Alexander.Kristofcak@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　vs.<br><br>ANDREA DENISE CONTRERAS-VERGARA,<br><br>　　　　Defendant. | Case No.: 19-MJ-24177-MSB-WQH<br><br>**ANSWERING BRIEF FOR THE UNITED STATES OF AMERICA**<br><br>Honorable William Q. Hayes |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..............................................................................................1

JURISDICTION AND BAIL STATUS .............................................................1

QUESTIONS PRESENTED...............................................................................1

STATEMENT .....................................................................................................2

    A. Contreras is charged with illegal entry after being apprehended in a remote, mountainous area close to the southern border and admitting to being a citizen of Mexico without legal permission to be in the United States. ...........................2

    B. At trial, the Government calls the Border Patrol agents who participated in Contreras's apprehension and a Customs and Border Protection agent who testifies about the absence of any records of Contreras's legal entry. .................2

    C. The Judge finds Contreras guilty and sentences her to time served.....................5

ARGUMENT ......................................................................................................5

    A. Section 1325(a)(1) Does Not Violate Equal Protection. ....................................5

    B. Numerous pieces of evidence corroborated Contreras's admission of alienage..6

    C. The trial court did not plainly err when it relied on Agent Wolchko's in-court identification. .....................................................................................................11

CONCLUSION .................................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**

*Commissioner v. Duberstein*, 363 U.S. 278 (1960) ........................................................6

*Gov't of Guam v. Guerrero*, 11 F.4th 1052 (9th Cir. 2021) ....................................6, 10

*Neil v. Biggers*, 409 U.S. 188 (1972) ..............................................................................12

*Perry v. New Hampshire*, 565 U.S. 228 (2012) ..........................................12, 13, 15, 16

*Schroeder v. Premo*, 714 F. App'x 666 (9th Cir. 2017) ................................................14

*Simmons v. United States*, 390 U.S. 377 (1968) ...........................................................12

*United States v. Akins*, 102 F. App'x 88 (9th Cir. 2004) ..............................................15

*United States v. Baxter*, 492 F.2d 150 (9th Cir. 1973) ..................................................11

*United States v. Burdeau*, 168 F.3d 352 (9th Cir. 1999) ...............................................15

*United States v. Campos-Atrisco*, No. 19-MJ-024683-KSC-BAS,
    2021 WL 5332918 (S.D. Cal. Nov. 16, 2021) ............................................................6

*United States v. Cerda-Ramirez*, 730 F. App'x 449 (9th Cir. 2018) ..............................8

*United States v. Domina*, 784 F.2d 1361 (9th Cir. 1986) ............................11, 12, 14, 15

*United States v. Field*, 625 F.2d 862 (9th Cir. 1980) ....................................................12

*United States v. Gallegos-Aparicio*, No. 19-CR-2637-GPC,
    2020 WL 7318124 (S.D. Cal. Dec. 11, 2020) ............................................................6

*United States v. Garcia-Villegas*, 575 F.3d 949, 951 (9th Cir. 2009) ............................7

*United States v. Givens*, 767 F.2d 574 (9th Cir. 1985) .................................................12

*United States v. Hernandez*, 105 F.3d 1330 (9th Cir. 1997) ...............................6, 7, 10

*United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001) .................................................11

*United States v. Lazcano-Neria*, No. 20-MJ-04538-AHG,
    2020 WL 6363685 (S.D. Cal. Oct. 29, 2020) .............................................................6

*United States v. Lopez-Alvarez*, 970 F.2d 583 (9th Cir.) ...............................................7

*United States v. Lucas-Hernandez*, No. 19-MJ-24522-LL,

2020 WL 6161150 (S.D. Cal. Oct. 21, 2020)..................................................6

*United States v. Lucas-Hernandez*, No. 19-MJ-24522-LL-TWR,
2022 WL 1556161 (S.D. Cal. May 17, 2022) ................................................6

*United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989)..........................................6

*United States v. Montgomery*, 150 F.3d 983 (9th Cir. 1998)..........................................11

*United States v. Morales-Roblero*, No. 19-MJ-24442-AHG,
2020 WL 5517594 (S.D. Cal. Sept. 14, 2020) ...............................................6

*United States v. Nunez-Beltran*, 434 F. App'x 640 (9th Cir. 2011) ...............................8

*United States v. Rios-Montano*, No. 19-CR-2123-GPC,
2020 WL 7226441 (S.D. Cal. Dec. 8, 2020) ..................................................6

*United States v. Thomas*, 849 F.3d 906 (10th Cir. 2017) ..............................................14

*United States v. Vasquez-Olea*, 463 Fed. App'x. 704 (9th Cir. 2011) ...........................8

*United States v. Whatley*, 719 F.3d 1206 (11th Cir. 2013)..........................................14

*United States v. Williams*, 436 F.2d 1166 (9th Cir. 1970).....................................12, 15

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) ........................................................................................5

*Walden v. Shinn*, 990 F.3d 1183 (9th Cir. 2021) .......................................................13

*Yu v. Idaho State Univ.*, 15 F.4th 1236 (9th Cir. 2021) ................................................10

**Statutes**

18 U.S.C. § 3401(a)                                                                 1

18 U.S.C. § 3402                                                                    1

**Rules**

Fed. R. Crim P. 58(g)(2)(B)                                                         1

Fed. R. Crim. P. 58(g)(D)                                                           10

## INTRODUCTION

Andrea Denise Contreras-Vergara ("Contreras") raises three challenges to her October 30, 2020 conviction for illegal entry in violation of 8 U.S.C. § 1325(a)(1). None have merit.

First, § 1325(a)(1) does not violate equal protection. The Ninth Circuit Court of Appeals is currently considering this question, but in the meantime, every court in this district to consider the issue has rejected this claim.

Second, the trial court did not clearly err in finding that the Government corroborated Contreras's alienage through numerous pieces of evidence.

Third, it was not plain error for the trial court to rely on an in-court identification that was not tainted by any improper pretrial law enforcement conduct.

Contreras's conviction should be affirmed.

## JURISDICTION AND BAIL STATUS

The Magistrate Court had jurisdiction under 18 U.S.C. § 3401(a). Final judgment was entered October 30, 2020, and Contreras timely filed her appeal. ECF Nos. 47 & 55; *See* Fed. R. Crim P. 58(g)(2)(B). Appeals of Magistrate Court rulings are taken to the District Court. 18 U.S.C. § 3402. Contreras was sentenced to time served and is no longer in criminal custody. Transcript of Trial ("Tr."), ECF No. 65, at 89.

## QUESTIONS PRESENTED

1. Does Section 1325(a)(1) violate equal protection under *Arlington Heights*?
2. Was it clear error for the trial court to find that numerous pieces of mode-of-entry evidence sufficiently corroborated Contreras's admission of alienage?
3. Was it plain error for the trial court to rely on an in-court identification that was not tainted by any improper law enforcement conduct?

1

# STATEMENT

**A.  Contreras is charged with illegal entry after being apprehended in a remote, mountainous area close to the southern border and admitting to being a citizen of Mexico without legal permission to be in the United States.**

On October 9, 2019, Border Patrol Agent Brian Miller was surveilling the western part of the Boulevard Station's area of responsibility using an infrared scope. Tr. 5–7. At around 8 p.m., he observed four individuals walking northbound through an area about 2 miles north of the international border with Mexico and approximately 23 miles away from the Tecate Port of Entry. Tr. 6–7, 9. Agent Miller alerted other agents over the radio about his observations. Tr. 9. Agent Andrew Wolchko responded to the area and after he encountered the four individuals, they started running in different directions. Tr. 33. Agent Wolchko found a female—whom he later identified as Contreras—in the bushes, lying on the ground with her face down. Tr. 33–35. Agent Wolchko conducted an immigration inspection in Spanish and Contreras stated that she was a citizen of Mexico and that she did not have any immigration documents that permitted her to be lawfully in the United States. Tr. 36. Based on these answers, Agent Wolchko arrested Contreras. *Id.*  Government record checks revealed that Contreras was recently removed or deported from the United States on September 30, 2019. Compl. at 2. On October 10, 2019, the United States charged Contreras with improper attempted entry by an alien in violation of 8 U.S.C. § 1325(a)(1). *Id.* at 1.

**B.  At trial, the Government calls the Border Patrol agents who participated in Contreras's apprehension and a Customs and Border Protection agent who testifies about the absence of any records of Contreras's legal entry.**

The matter proceeded to a bench trial on October 30, 2020. ECF No. 46.

The Government first called Border Patrol Agent Miller. Tr. 5. Agent Miller had been an agent at the Boulevard Station for 12 years. *Id.* On the evening of October 9, 2019, Agent Miller was using infrared technology to surveil his area of responsibility. Tr. 6. He has used this technology hundreds of times. Tr. 7. Agent Miller described the

2

area he was surveilling that evening as "very rural, mountainous, [with] rocky terrain." Tr. 6. Agent Miller further testified that there are not many houses around, if any, no campgrounds,[1] hiking trails, or businesses in that area, and that he did not see any tents, campfires, or hiking stick in the area. Tr. 8, 23. He estimated that the area is two miles north of the southern border with Mexico and roughly 23–24 miles away from the nearest point of entry and is a common route used for smuggling. Tr. 9.

At around 8 p.m., Agent Miller spotted four individuals walking northbound through the area and alerted other agents over the radio about his observations. Tr. 7, 9. Agent Wolchko responded to Agent Miller's alert and Agent Miller guided Agent Wolchko to the area where he last saw the four individuals. Tr. 10–11.

Next, the Government called Agent Wolchko. Tr. 25. Agent Wolchko had been employed at the Border Patrol Boulevard Station for 12 years at the time of the events on October 9, 2019. Tr. 25–26. Agent Wolchko testified that, while attending an academy to become a Border Patrol officer, he received training on conducting immigration inspections in both Spanish and English and has conducted a thousand or more of them. Tr. 27, 29.

On October 9, 2019, Agent Wolchko was wearing a uniform when he responded to the area where Agent Miller saw the four individuals. Tr. 31. After arriving in the area, Agent Wolchko spotted the individuals and went ahead of them on their path of travel and waited for them. Tr. 32. After the four individuals saw Agent Wolchko, they first hesitated and then ran in different directions. Tr. 32–33. Agent Wolchko pursued them and eventually apprehended two of them, including a female he found in a bush, lying face down on the ground. Tr. 33–34. Agent Wolchko identified Contreras in court as the female he encountered that evening. Tr. 35.[2]

---

[1] On cross examination, the defense asked Agent Miller about a nearby property labeled as "Jewell Valley Campground." Tr. 20. Agent Miller clarified that this is a private property, not a public campground. *Id.*

[2] After the prosecutor asked "Of those two people you encountered that evening do you see one of them in the courtroom this morning," the court instructed "You might

3

After encountering Contreras, Wolchko conducted an immigration inspection in Spanish. Tr. 36. Contreras stated that she was a citizen of Mexico and she denied having any immigration document that permitted her to be lawfully in the United States. *Id.* Wolchko testified that during the inspection he had a calm demeanor, that he was not yelling or pointing his gun, and that he did not handcuff the defendant. Tr. 37. He further testified that there are no sidewalks, hiking trails, streetlights, churches, or businesses in the area where he arrested Contreras, that Contreras did not have a hiking stick, hunting equipment, or camping equipment, and that there were no tents or campfires nearby. Tr. 39, 41.

On cross examination, Agent Wolchko testified that he had arrested roughly 1,200 people since the last time he saw Contreras. Tr. 44. Nonetheless, Agent Wolchko stated that he would be able to pick Contreras out of a photo array of some of the 1,200 people he has arrested since then especially because of the way Contreras absconded. Tr. 47. Agent Wolchko also testified that there is an airstrip about a half mile to a mile west of where Contreras was found, but he stated that he has never seen an airplane land there in his entire career. Tr. 50. Agent Wolchko also conceded that even though there are no hiking trails, one could hike in the area, and that it is not illegal to hike in the area. Tr. 52.

Finally, the Government called Customs and Border Protection Officer Melisa Norman. Tr. 63. Officer Norman testified that she queried TECS, a government database that shows crossing records for entries and departures into and out of the United States through official ports of entry, and found no record of Contreras presenting herself at a port of entry and being allowed to enter lawfully. Tr. 67.

---

have her pull her mask down. Everybody pull your mask down for a moment, everybody in the courtroom." Tr. 35. The defense did not object to this procedure or the in-court identification. *Id.*

4

**C.    The Judge finds Contreras guilty and sentences her to time served.**

The defense did not call any witnesses. Tr. 73. In its closing argument, the defense argued that the in-court identification was not reliable and that the Government failed to prove alienage. Tr. 77–80. Specifically, the defense argued that the evidence about the remoteness of the area was mixed and that a person could hike in the area. Tr. 78.

The court found Contreras guilty. Tr. 85. In addition to Contreras's admission, the court found that there was sufficient corroboration through circumstantial evidence in light of testimony by two experienced agents that Contreras was found two miles north of the border and approximately 23 miles from the nearest point port of entry in a mountainous, high altitude area with high brush, no homes, no businesses, and which is a common route for smugglers. Tr. 84. Further, the court relied on the fact that the individuals "took off running" when they saw Agent Wolchko. *Id.* The court specifically found it to be a "stretch of any imagination to say that the individuals were out there camping. . . . a stretch of common sense." *Id.* The court thought it "doubtful they would all run in different directions" if they were in the area for the purposes of camping and emphasized the fact that Agent Wolchko found Contreras lying face down in a brush.

The court also relied on Agent Wolchko's in-court identification. Tr. 85. The court found Agent Wolchko to be honest and reliable and noted that he told the court "on the stand what he did remember, what he did not remember." Tr. 85. Finally, the court took into account the evidence about the absence of any legal port of entry crossing. *Id.*

The court sentenced Contreras to time served. Tr. 89.

## ARGUMENT

**A.    Section 1325(a)(1) Does Not Violate Equal Protection.**

Contreras briefly argues her prosecution violated equal protection under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).

5

AOB 7–8. This issue is currently pending before the Ninth Circuit. *See United States v. Carrillo-Lopez*, No. 21-10233. In the meantime, every court in this district to consider the issue has rejected the claims that Defendant makes here.[3] This Court should do the same.

**B.    Numerous pieces of evidence corroborated Contreras's admission of alienage.**

1.    *Standard of Review*. "Because corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, [the Court] review[s] for clear error."[4] *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (citing *United States v. Miller*, 874 F.2d 1255, 1279 (9th Cir. 1989)). "The clear error standard is significantly deferential, and clear error is not to be found unless the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Gov't of Guam v. Guerrero*, 11 F.4th 1052, 1059 (9th Cir. 2021) (quoting *Commissioner v. Duberstein*, 363 U.S. 278, 291 (1960)). Such a definite and firm conviction would require the Court to find that the trial court's determination was wrong because it was: "(1) illogical, (2) implausible, or (3) 'without support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

2.    *Legal Principles*. "When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require

---

[3] *See, e.g.*, *United States v. Lucas-Hernandez*, No. 19-MJ-24522-LL-TWR, 2022 WL 1556161, at *9 (S.D. Cal. May 17, 2022); *United States v. Campos-Atrisco*, No. 19-MJ-024683-KSC-BAS, 2021 WL 5332918, at *4–5 (S.D. Cal. Nov. 16, 2021); *United States v. Gallegos-Aparicio*, No. 19-CR-2637-GPC, 2020 WL 7318124, at *1–4 (S.D. Cal. Dec. 11, 2020); *United States v. Rios-Montano*, No. 19-CR-2123-GPC, 2020 WL 7226441, at *2–8 (S.D. Cal. Dec. 8, 2020); *United States v. Lazcano-Neria*, No. 20-MJ-04538-AHG, 2020 WL 6363685, at *6–9 (S.D. Cal. Oct. 29, 2020); *United States v. Lucas-Hernandez*, No. 19-MJ-24522-LL, 2020 WL 6161150, at *2–4 (S.D. Cal. Oct. 21, 2020); *United States v. Morales-Roblero*, No. 19-MJ-24442-AHG, 2020 WL 5517594, at *7–10 (S.D. Cal. Sept. 14, 2020).

[4] Contreras incorrectly states that the standard of review is *de novo*. AOB 9.

'some independent corroborating evidence in order to serve as the basis for a conviction.'" *Hernandez*, 105 F.3d at 1332 (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir.)). To satisfy the corroboration requirement, the Government "must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *Lopez-Alvarez*, 970 F.2d at 592.

In *Hernandez*, the Ninth Circuit held that an admission of alienage was sufficiently corroborated by the combination of a prior contemporaneous admission, the fact that the defendant entered the United States by scaling the border fence, and the record of defendant's prior deportation. 105 F.3d at 1332–33. Building on *Hernandez*, the Ninth Circuit held in *United States v. Garcia-Villegas* that mode-of-entry evidence was by itself sufficient to corroborate the defendant's admission of alienage when it came from an independent source. 575 F.3d 949, 951 (9th Cir. 2009).

3.   *Analysis*. Contreras argues that there was insufficient corroboration of her admission of alienage at trial. In doing so, Contreras asserts that mode-of-entry evidence is not sufficient—contrary to binding Ninth Circuit precedent—and relies on three trial court decisions in cases involving substantially less corroboration than was presented here and which were evaluating the evidence *de novo*. Applying the correct law, to the facts of this case, and under the significantly deferential standard of clear error review, the Court should affirm the trial court's decision.

As an initial matter, the Ninth Circuit has clearly established that independent mode-of-entry evidence can on its own sufficiently corroborate the defendant's admission of alienage. *See Garcia-Villegas*, 575 F.3d at 951. Furthermore, the mode-of-entry evidence itself can be entirely circumstantial: In *Garcia-Villegas*, one source of independent corroboration was the apprehending agent's testimony that he found the defendant near the border with "torn clothes and bloody hands, hiding in a bush." *Id.* Following *Garcia-Villegas*, the Ninth Circuit has ruled in at least three unpublished cases that independent evidence of mode of entry is sufficient corroboration of an

admission of alienage. *See United States v. Vasquez-Olea*, 463 F. App'x 704, 705–06 (9th Cir. 2011) ("The admissions were further corroborated by evidence of the mode of [Defendant's] entry to the United States and the circumstances under which [the arresting agent] tracked and discovered the group, including the activated sensors beginning at the border, trail of muddy footprints down a known smuggling trail, and remote location in which the group was hiding when apprehended."); *United States v. Nunez-Beltran*, 434 F. App'x 640, 641–42 (9th Cir. 2011) (holding that Defendant's attempt to cross the border without documentation and without inspection by running through a vehicle lane at the port of entry and Defendant's multiple admissions provided sufficient corroboration of Defendant's admission of alienage); *United States v. Cerda-Ramirez*, 730 F. App'x 449, 453 (9th Cir. 2018) (admissions were sufficiently corroborated through "circumstantial evidence that Cerda-Ramirez entered the United States by scaling a fence and direct evidence that he thereafter hid from the Border Patrol"). Accordingly, the Court should reject Contreras's assertion that mode-of-entry evidence is insufficient corroboration.

And in this case, there was not just *some* corroborating mode-of-entry evidence, but a plethora of it. First, two agents testified about observing Contreras walking northbound in an area close to the border (two miles north) but far from the nearest point of entry (approximately 23 miles). Tr. 9, 34. Second, they both testified that the area was remote, with no businesses, public campgrounds, or similar attractions. Tr. 8, 41. Third, Agent Miller testified that the area is a common smuggling route. Tr. 9. Fourth, when Contreras encountered Agent Wolchko, she started running away. Tr. 33. Fifth, when Agent Wolchko found Contreras, she was lying face down on the ground. Tr. 33. Finally, in addition to all of this evidence of Contreras's unlawful mode of entry, the Government also provided evidence of *absence* of lawful entry: Agent Norman's testimony that there was no record of Contreras being lawfully admitted at a designated port of entry. Tr. 67. In sum, the mode-of-entry evidence in this case overwhelmingly corroborated Contreras's admission of alienage.

      The amount of corroborating evidence in this case is clearly distinguishable from the three cases cited by Contreras in which the trial courts found insufficient corroboration. In *United States v. Mazariegos-Ramirez*, the corroborating evidence consisted of: (1) Defendant being found close to the border; (2) Defendant being seen walking north; and (3) Defendant being found hiding in a brush. Government's Suppl. Br. at 2–3, No. 18-MJ-22276-WQH (S.D. Cal. Mar. 12, 2019), ECF No. 25. By contrast, in this case, the Government also introduced testimony from three different agents regarding: (1) the remoteness of the area, Tr. 8, 41; (2) the use of the area as a common smuggling route, Tr. 9; (3) Contreras's attempted escape, Tr. 33; and (4) the absence of any record of Contreras's lawful entry, Tr. 67.

      Similarly, in *United States v. Eusebio Montanez-Acuna*, the corroborating evidence consisted of Defendant: "(1) hiding or 'dug in'; (2) in thick brush; (3) on Otay Mountain; (4) with others who were also hiding; (5) without documents authorizing him lawfully to enter or be present in the United States; (6) located three miles east of the nearest POE, and only one mile north of the border to his home country." Government's Suppl. Br. at 3, No. 19-MJ-20703-BLM (S.D. Cal. April 3, 2019), ECF No. 32. And in *United States v. Raul Gonzalez-Armenta*, the corroborating evidence presented by the Government showed that "the Defendant (1) was found at night; (2) in a remote, deserted area with no lights, cameras, or paved roads and known for alien apprehensions; (3) approximately 150 yards north of the border and one mile east of Tecate port of entry; (4) hiding in the brush with another undocumented individual." Government's Suppl. Br. at 2, No. 18-CR-5496-GPC (S.D. Cal. Sept. 19, 2019), ECF No. 36. In neither case was there an attempted escape by the Defendant or testimony about government records showing an absence of a lawfully authorized entry into the United States. In sum, the corroborating evidence offered in these three cases cited by Contreras pales in comparison with the evidence introduced in this case.

      Finally, unlike in the three trial court decisions cited by Contreras which considered the trial evidence de novo, on appeal from a magistrate judge's judgment,

"[t]he defendant is not entitled to a trial de novo by a district judge." Fed. R. Crim. P. 58(g)(D). Instead, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* And that scope of appeal with respect to corroboration of a defendant's admission is clear error review. *See Hernandez*, 105 F.3d at 1332 ("Because corroboration of a defendant's admission is a mixed question of law and fact that is primarily factual, we review for clear error."). In other words, the question for this Court is not whether "it would have decided the case differently," *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021), or whether the magistrate judge's decision was "out of step with other judges in this district," AOB 13, as Contreras claims. Instead, the Court can only disturb the magistrate judge's finding of sufficient corroboration of Contreras's admission if it is "left with the definite and firm conviction that a mistake has been committed," *Guerrero*, 11 F.4th at 1059, because the finding was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (cleaned up). And given the Ninth Circuit precedent establishing that independent mode-of-entry evidence alone can provide sufficient corroboration and the abundance of mode-of-entry evidence introduced at trial,[5] Contreras cannot show that the magistrate judge's finding that her admission was sufficiently corroborated was illogical, implausible, or without support in inference fairly drawn from the record.

---

[5] To review, the Government introduced the following corroborating evidence: (1) testimony from Agents Miller and Wolchko that Contreras was walking northbound in a group in an area close to the border but far from the nearest point of entry, Tr. 9, 34; (2) testimony from Agents Miller and Wolchko that the area was remote, with no businesses, public campgrounds, or similar attractions, Tr. 8, 41; (3) testimony from Agent Miller that the area is a common smuggling route, Tr. 9; (4) testimony from Agent Wolchko that Contreras she started running away upon encountering him, Tr. 33; (5) testimony from Agent Wolchko that Contreras was lying face down on the ground when he found her, Tr. 33; and (6) testimony from Agent Norman that there was no record of Contreras being lawfully admitted at a designated port of entry. Tr. 67.

Accordingly, the magistrate judge's finding that Contreras's admission was sufficiently corroborated should not be disturbed.

### C. The trial court did not plainly err when it relied on Agent Wolchko's in-court identification.

1. *Standard of Review*. Where, as here, no objection was made to an in-court identification, the Court reviews for plain error. *United States v. Baxter*, 492 F.2d 150, 170 (9th Cir. 1973). Before the reviewing court can correct an error not raised at trial, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001). Even assuming a timely objection occurred at trial, procedures for in-court identifications are only reviewed for an abuse of discretion. *United States v. Domina*, 784 F.2d 1361, 1369 (9th Cir. 1986).[6]

2. *Legal Principles*. The Supreme Court distinguishes between pretrial identifications and in-court identifications. A long line of cases "established rather stringent requirements for pretrial identification procedures, the violation of which will not only preclude the admission of evidence of the pretrial identification itself, but may also preclude a later in-court identification that was tainted by the earlier suggestive procedures." *Domina*, 784 F.2d at 1367 (citations omitted). The resulting framework consisted of two steps: first, a court must determine whether a pretrial identification procedure was "so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." *United States v. Field*, 625 F.2d 862, 865 (9th Cir.

---

[6] Due to the combination of plain error and abuse of discretion review, the in-court identification in this case is thus shielded from de novo review twice over, contrary to Contreras's assertion that such identifications are reviewed de novo. AOB 14. *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998), which Contreras cites for the proposition that de novo review applies here, instead states that de novo review applies to "the constitutionality of *pretrial* identification procedures." *Id.* (emphasis added).

1980) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Second, if the pretrial identification procedure was impermissibly suggestive, the court must decide whether the witness's identification was "nonetheless reliable," using the factors announced in *Neil v. Biggers*, 409 U.S. 188, 198–200 (1972). *United States v. Givens*, 767 F.2d 574, 581 (9th Cir. 1985).[7]

By contrast, until its decision in *Perry v. New Hampshire*, 565 U.S. 228 (2012), the Supreme Court has not "set any guidelines for in-court identification procedures nor indicated that in-court identification must be made in a way that is not suggestive." *Domina*, 784 F.2d at 1368. Thus, on the one hand, the Ninth Circuit in *Domina* recognized that "[t]here is no constitutional entitlement to an in-court line-up or other particular methods of lessening the suggestiveness of in-court identification, such as seating the defendant elsewhere in the room." *Id.* at 1369. And accordingly, it declined to extend the two-pronged suggestiveness/reliability analysis of pretrial procedures to in-court identification procedures. *Id.* at 1368. On the other hand, the Ninth Circuit has retained abuse-of-discretion review for in-court identification procedures so "unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process of law." *Id.* (quoting *United States v. Williams*, 436 F.2d 1166, 1168–69 (9th Cir. 1970)). In particular, the Court of Appeals said that "where the question of guilt or innocence hangs entirely on the reliability and accuracy of the in-court identification, the identification procedure should be as lacking in inherent suggestiveness as possible." *Id.*

This landscape changed in *Perry*, in which the Supreme Court held that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily

---

[7] The five factors are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199–200.

suggestive circumstances arranged by law enforcement." 565 U.S. at 248. In doing so, the Supreme Court specifically rejected "a rule requiring trial judges to prescreen eyewitness evidence for reliability any time an identification is made under suggestive circumstances." *Id.* at 240. The Supreme Court reasoned that while "[m]ost eyewitness identifications involve some element of suggestion" and "[i]ndeed, all in-court identifications do," *id.* at 244, "the potential unreliability of [this] type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair," *id.* at 245. The Supreme Court thus concluded that "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Id.*

The Supreme Court in *Perry* explained that its "unwillingness to enlarge the domain of due process" to include all in-court identifications rested on (1) "the recognition that the jury, not the judge, traditionally determines the reliability of evidence," and (2) the "safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability," which include (i) "the defendant's Sixth Amendment right to confront the eyewitness," (ii) the "defendant's right to the effective assistance of an attorney, who can expose the flaws in the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments," (iii) "[e]yewitness-specific jury instructions, which many federal and state courts have adopted, [which] warn the jury to take care in appraising identification evidence," and finally, (iv) "[t]he constitutional requirement that the government prove the defendant's guilt beyond a reasonable doubt also impedes convictions based on dubious identification evidence." *Id.* at 728–29.

Although the Ninth Circuit has not expressly declared that the holding of *Perry* abrogated its analysis in *Domina*, several Ninth Circuit decisions treat *Perry* as the new standard. *See Walden v. Shinn*, 990 F.3d 1183, 1198 (9th Cir. 2021) ("If the police did

13

not 'arrange[] suggestive circumstances leading the witness to identify a particular person as the perpetrator,' the inquiry ends." (quoting *Perry*, 565 U.S. at 232)); *Schroeder v. Premo*, 714 F. App'x 666, 669 (9th Cir. 2017) ("Under *Perry*, however, only police-created impermissibly suggestive circumstances implicate due process concerns and thus require a reliability assessment by the trial court.").

Further, at least two Courts of Appeals have expressly held post-*Perry* that it is not impermissibly suggestive to obtain in-court identifications when it is obvious which person is the defendant. Relying on *Perry*, the Tenth and Eleventh Circuits both concluded that in-court identifications of the defendants, in each case the only African-American man at counsel table, did not warrant judicial reliability assessments because they were not the product of improper conduct by law enforcement. *See United States v. Thomas*, 849 F.3d 906, 910–11 (10th Cir. 2017) (holding that after *Perry*, a judicial inquiry into suggestiveness and reliability of in-court identification is not necessary); *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir. 2013) ("*Perry* makes clear that, for those defendants who are identified under suggestive circumstances not arranged by police, the requirements of due process are satisfied in the ordinary protections of trial.").

3. *Analysis*. Contreras argues that Agent Wolchko's in-court identification was both unduly suggestive and unreliable, and that her conviction must therefore be vacated. However, applying the correct legal post-*Perry* framework, it was not error, let alone plain error, for the court to consider Agent Wolchko's in-court identification as it was untainted by any improper pretrial law enforcement conduct.

To begin with, Contreras does not claim that Agent Wolchko's in-court identification was tainted by improper pretrial law enforcement procedures. Instead, she merely argues that the circumstances of the in-court identification itself were unduly suggestive. Thus, even under pre-*Perry* law, there was no requirement for the court to perform the two-step analysis required for pretrial identification procedures. *See Domina*, 784 F.2d at 1368 (concluding that "no holding of the Supreme Court nor of

14

this circuit has mandated" applying the *Biggers* analysis "in the absence of a pretrial identification" and observing that "[w]hen the initial identification is in court, there are different considerations"); *see also United States v. Akins*, 102 F. App'x 88, 89 (9th Cir. 2004), *vacated on other grounds*, 543 U.S. 1116 (2005) (unpublished) ("[W]here, as here, there was no pretrial identification, and a witness is identifying a defendant for the first time at trial, we have declined to apply *Biggers*." (citing *Domina*, 784 F.2d at 1367–69)). Instead, the in-court identification procedure was "within the discretion of the court," *Domina*, 784 F.2d at 1369, and it is thus only reviewable for an abuse of that discretion.

The court here did not abuse its discretion merely because it did not attempt to lessen the suggestiveness of Contreras's sitting at the defense table. The Ninth Circuit indeed observed that "an in-court identification procedure in which the witness points out the defendant, who is seated at the table with counsel, is inherently suggestive and of minimal value." *United States v. Burdeau*, 168 F.3d 352, 358 (9th Cir. 1999). And the Court of Appeal therefore said it may be "*advisable* to attempt to utilize procedures which minimize this prejudicial effect." *Id.* (emphasis added). But the Court of Appeals made it plain that the trial court is simply "not under any obligation to do so." *Id.* And it cannot amount to abuse of the trial court's discretion to fail to do something that it had no obligation to do. *See Williams*, 436 F.2d at 1168-69 (no abuse of discretion in failing to mitigate inherent courtroom suggestiveness through an in-court lineup).

Furthermore, after *Perry*, there is *no* screening required for in-court identification procedures untainted by law enforcement conduct. Instead, the reliability of such in-court identifications is tested "through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 565 U.S. at 233.

Such testing undoubtedly occurred here. Contreras was represented by counsel. Tr. 3. Contreras was able to confront the Government's witnesses and Contreras's counsel vigorously cross-examined Agent Wolchko about his in-court identification of Contreras. Tr. 42–46. As a result of this cross-examination, Agent Wolchko acknowledged to Contreras's counsel that Contreras was the only Hispanic female sitting next to her. *Id.* Further, Agent Wolchko admitted that it has been a year since he arrested Contreras, that he has arrested approximately 1,200 people since then, and that he has not seen or spoken to Contreras since her arrest. Tr. 42–44. Agent Wolchko also admitted that the pictures included in the reports were such "poor quality" that it "makes it tough to make an identification based on these photos." Tr. 46. The magistrate judge knew all this information when, as the factfinder, he nonetheless found Agent Wolchko honest and reliable. Tr. 85. And the judge found beyond a reasonable doubt that Contreras was guilty. *Id.* In sum, the reliability of Agent Wolchko's identification was tested in the manner *Perry* envisioned. *See Perry*, 565 U.S. at 247–248.

Accordingly, because the trial court was under no obligation to prescreen the in-court identification or minimize its suggestiveness, it was not error, let alone plain error, for it to rely on Agent Wolchko's in-court identification of Contreras. For the same reasons, the in-court identification did not affect Contreras's substantial rights or affect the fairness, integrity, or public reputation of judicial proceedings.

## CONCLUSION

Contreras's conviction should be affirmed.

Respectfully submitted,

Dated: April 10, 2023

RANDY S. GROSSMAN
United States Attorney

/s/ Alexander Kristofcak
ALEXANDER KRISTOFCAK
Assistant United States Attorney

16