UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREA DENISE CONTRERAS-VERGARA,<br><br>　　　　　　　　　　　Defendant. | Case No.:  19-mj-24177-WQH<br><br>**ORDER** |

HAYES Judge:

　　The matter before the Court is the Notice of Appeal to District Court filed by Defendant Andrea Denise Contreras-Vergara. (ECF No. 55.)

### BACKGROUND

　　On October 10, 2019, the Government filed a Complaint charging Defendant with misdemeanor improper attempted entry in violation of 8 U.S.C. §1325(a)(1). (ECF No. 1.)

　　On October 15, 2019, Defendant was released on bond. (ECF No. 9.)

　　On December 3, 2019, Defendant filed a variety of pretrial challenges to the charges, including a motion to dismiss the complaint on the grounds that § 1325(a)(1) violates the Equal Protection Clause of the U.S. Constitution. (ECF No. 18.)

　　On February 4, 2020, Magistrate Judge Michael S. Berg ruled on Defendant's pretrial motions, including denying the motion to dismiss on the grounds that § 1325(a)(1) violates the Equal Protection Clause. (ECF No. 28.)

On October 30, 2020. Judge Berg conducted a bench trial. (ECF No. 47.) At trial, the Government called three witnesses: Border Patrol Agent Brian Miller, who spotted four individuals with infrared technology close to the international border between Mexico and the United States; Border Patrol Agent Andrew Wolchko, who arrested and conducted an immigration inspection of Defendant; and U.S. Customs and Border Protection Officer Melisa Norman, who looked through the TECS government database for information related to Defendant.

Agent Miller testified that, on the evening of October 9, 2019, he was using infrared technology to surveil his area of responsibility, which was "very rural, mountainous, rocky terrain." (Trial Trans. at 6, ECF No. 292.) Agent Miller estimated the area to be two miles north of the southern border with Mexico and 23 or 24 miles away from the nearest point of entry and is a "common … smuggling route." *Id*. at 9. Agent Miller testified that he had been an agent at the Boulevard Station for 12 years and he had used the infrared technology hundreds of times. *Id*. at 7. Agent Miller testified that there were no nearby houses, public businesses, or public campgrounds, although there was a private campground, ranch, and airstrip nearby and he had seen hikers in the area in the past. *Id*. at 8, 20-21. Agent Miller testified that, with the infrared technology, he observed four individuals walking northbound through the area and alerted other agents over the radio about his observations. *Id*. at 7-9. Agent Miller testified that Agent Wolchko responded to Agent Miller's alert and Agent Miller guided Agent Wolchko to the area where he last saw the four individuals. *Id*. at 10-11.

Agent Wolchko testified that he had been employed at the Border Patrol Boulevard Station for 12 years at the time of the events on October 9, 2019, and he received training on conducting immigration inspections in both Spanish and English and had conducted a thousand or more of them. *Id*. at 25-29. Agent Wolchko testified that, on October 9, 2019, he was wearing a uniform when he responded to the area where Agent Miller saw the four individuals. *Id*. at 31. Agent Wolchko testified that he spotted the four individuals, shined his flashlight on them, causing the individuals to run in different directions. *Id*. at 32-33.

1  Agent Wolchko testified that he pursued them and eventually apprehended two of them,
2  including a female he found in the brush, lying face down on the ground. *Id*. at 33-34.
3      At this point in Agent Wolchko's testimony, the following exchange occurred:

GOV'T COUNSEL: Of those two people you encountered that evening, do you see one of them in the courtroom this morning?

THE COURT: You might have her pull her mask down. Everybody pull your mask down for a moment, everybody in the courtroom.

GOV'T COUNSEL: You can say yes or no if you see any person you encountered that evening?

AGENT WOLCHKO: Yes.

GOV'T COUNSEL: Can you please point that person out to the court, tell the court where that person is seated and describe an article of clothing they're wearing?

AGENT WOLCHKO: She's sitting to the right of you. She's wearing a grey jacket and blue t-shirt.

THE COURT: Thank you. You can put your mask on again if you prefer. Thank you.

GOV'T COUNSEL: Let the record reflect the witness has identified the defendant in this case.

THE COURT: It will reflect.

GOV'T COUNSEL: So to be clear, this defendant you have just identified was the second person you encountered?

AGENT WOLCHKO: That's correct.

*Id*. at 35.

    Agent Wolchko testified that, after encountering Defendant, Agent Wolchko conducted an immigration inspection in Spanish, during which Defendant stated that she was a citizen of Mexico and she denied having any immigration document that permitted

her to be lawfully in the United States. *Id*. at 36. Agent Wolchko testified that during the inspection he had a calm demeanor, was not yelling or pointing his gun, and did not handcuff Defendant. *Id*. at 37. Agent Wolchko testified that there were no sidewalks, hiking trails, streetlights, churches, or businesses in the area where he arrested Defendant, that Defendant did not have a hiking stick, hunting equipment, or camping equipment, and that he observed no tents or campfires nearby. *Id*. at 39, 41.

Defense counsel cross-examined Agent Wolchko about his in-court identification of Defendant. Agent Wolchko admitted that Defendant was "the only Hispanic female seated next to [defense counsel]." *Id*. at 42. Defense counsel questioned Agent Wolchko about the "roughly 1200 people [Agent Wolchko had arrested] between the last time [Agent Wolchko] saw Ms. Contreras and today." *Id*. at 43-44. Defense counsel's further questioning led Agent Wolchko to testify as follows: Agent Wolchko had not seen or spoken with Defendant since her arrest; Agent Wolchko could not remember what clothes Defendant was wearing during the arrest or whether Agent Wolchko drove her to the station; the picture of Defendant included in the arrest report was of such "poor quality" that it "makes it tough to make an identification based on these photos," *id*. at 46; there was an airstrip, a house, and a dirt road in the area where the arrest occurred; "it's possible for someone to have legal status to live or be in the United States yet to not have applied for documents to validate that permission," *id*. at 56; and "it is possible" that Agent Wolchko did not ask Defendant "if she entered the United States illegally on October 9th," *id*. at 57.

Finally, the Government called Officer Norman, who testified that she queried TECS, a government database that shows crossing records for entries and departures into and out of the United States through official ports of entry. *Id*. at 65. Officer Norman testified that she found no record of Defendant presenting herself at a port of entry and being allowed to enter lawfully. *Id*. at 67. Officer Norman testified that she was not tasked with looking at whether Defendant "has status to be in the United States today." *Id*. at 72.

Defendant did not call any witnesses or present any affirmative evidence. *Id*. at 73.

Judge Berg then orally issued his ruling finding Defendant guilty of misdemeanor attempted illegal entry under § 1325(a)(1). *See id*. at 83-85. Judge Berg highlighted Defendant's statements to Agent Wolchko that she was a citizen of Mexico and had no documentation to be in the United States legally. Judge Berg stated that Defendant's statements were not alone sufficient to convict Defendant, and the Government bore the burden of introducing corroborating evidence. Judge Berg found that there was sufficient corroboration through circumstantial evidence in light of testimony by two experienced agents that Defendant was found two miles north of the border and approximately 23 miles from the nearest point port of entry in a mountainous, high-altitude area with high brush, no homes, no businesses, and which is a common route for smugglers. Judge Berg relied on the testimony that the individuals "took off running" in different directions when they saw Agent Wolchko, and that Agent Wolchko found Defendant "laying face down in the brush." *Id*. at 84-85. Judge Berg said, "it would be a stretch of any imagination to say that the individuals were out there camping ... a stretch of common sense." *Id*. Judge Berg relied on Agent Wolchko's in-court identification, and found Agent Wolchko to be "honest" and his testimony to be "reliable." *Id*. at 85. Judge Berg stated that Agent Wolchko "told us on the stand what he did remember, what he did not remember." *Id*. Finally, Judge Berg remarked on the evidence about the absence of any legal port of entry crossing.

The parties then agreed to immediate sentencing. After hearing from the parties, Judge Berg sentenced Defendant to time served. *Id*. at 89.

On November 3, 2020, Defendant filed a Notice of Appeal to the District Court. (ECF No. 55.) After a stay of the case (*see* ECF Nos. 68, 71), the parties filed their respective appeal briefs (*see* ECF Nos. 75, 77, 78).

## ANALYSIS

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. Rule 58(g)(2)(B) of the Rules of Criminal Procedure provides that "[a] defendant may appeal a magistrate judge's

judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B). Defendant's Notice of Appeal was timely filed.

"The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). In reviewing the conviction, the district court must "ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000) (quotation omitted). The magistrate judge's findings of fact are reviewed for clear error, *see, e.g.*, *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002), while the magistrate judge's legal conclusions, including challenges to the sufficiency of evidence and questions of statutory interpretation, are reviewed de novo. *See, e.g.*, *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015).

### I. Contentions of the Parties

Defendant contends that the Court should vacate her conviction for three reasons. First, Defendant contends that "the illegal entry statute violates the Equal Protection Clause." (Appellant Opening Br. at 1, ECF No. 75.) Second, Defendant contends that "there was insufficient corroborating evidence of alienage presented to convict her violating the *corpus delicti* doctrine." *Id*. Finally, Defendant contends that "the in-court identification of Ms. Contreras is unreliable and violated her due process rights." *Id*.

The Government contends that the Court should affirm Defendant's conviction because "§ 1325(a)(1) does not violate equal protection," "the trial court did not clearly err in finding that the Government corroborated Contreras's alienage through numerous pieces of evidence," and "it was not plain error for the trial court to rely on an in-court identification that was not tainted by any improper pretrial law enforcement conduct." (Appellee Br. at 1, ECF No. 77.)

### II. Equal Protection

Defendant contends that "illegal entry under § 1325 violates the Equal Protection Clause" because "Congress created the illegal entry law … with a discriminatory intent

and … the government could not show it would have been enacted in the absence of this intent." (Appellant Opening Br. at 8, ECF No. 75.) Specifically, Defendant contends that the historical evidence presented in Defendant's motion to dismiss demonstrated that the original illegal entry law was enacted with a discriminatory purpose, and therefore § 1325 is unconstitutional under *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

The Ninth Circuit rejected a similar challenge to an analogous immigration law in *United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023), wherein the Ninth Circuit addressed whether 8 U.S.C. § 1326, which criminalizes illegal reentry into the United States by aliens, violates the Equal Protection Clause of the Fifth Amendment. The Ninth Circuit stated: "We conclude that Carrillo-Lopez did not meet his burden to prove that Congress enacted § 1326 because of discriminatory animus against Mexicans or other Central and South Americans. 'This conclusion ends the constitutional inquiry,' and we reject Carrillo-Lopez's equal protection claim." *Id*. at 1154 (quoting *Arlington Heights*, 429 U.S. at 267). The court stated that "[t]he strong 'presumption of good faith' on the part of the 1952 Congress is central to our analysis." *Id*. (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). Section 1325, like § 1326, originated in 1952 with the passage of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq*. *See Carrillo-Lopez*, 68 F.4th at 1146; *see also* Pub L. No. 82-414, §§ 275-76, 66 Stat. 163, 229 (1952). Here Defendant was convicted of attempted entry under § 1325(a)(1), which was added to the list of prohibitions contained in § 1325 in 1990. *See* Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990). The party challenging a statute bears the "'burden to overcome the presumption of legislative good faith and show that' the legislative body 'acted with invidious intent.'" *Carrillo-Lopez*, 68 F.4th at 1141 (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2325 (2018)). After review of Defendant's Motion to Dismiss and the related briefing (*see* ECF Nos. 18, 21), the Court finds that, as in *Carrillo-Lopez*, Defendant has failed to rebut "[t]he strong 'presumption of good faith' on the part of the 1952 Congress" and the

1990 Congress. *Carrillo-Lopez*, 68 F.4th at 1154 (quotation omitted). Accordingly, the Court finds Defendant has failed to show that 8 U.S.C. § 1325 is unconstitutional.

### III. Proof of Defendant's Alienage

Defendant contends that "[t]he government failed to prove the element of alienage beyond a reasonable doubt because it lacked corroboration of Ms. Contreras' single, equivocal alienage statement." (Appellant Opening Br. at 9, ECF No. 75.)

Section 1325(a)(1) prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). "Alienage is a specific element of this offense, and the government must prove alienage beyond a reasonable doubt." *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009) (citing *United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005)). "When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require 'some independent corroborating evidence in order to serve as the basis for a conviction.'" *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992)); *see also United States v. Garcia-Villegas*, 575 F.3d 949, 950 (9th Cir. 2009) ("Admissions, postfactum, of the elements of the crime with which the defendant is charged must be corroborated by 'substantial independent evidence which would tend to establish the trustworthiness of the statement[s].'") (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)). "This is the contemporary iteration of the common law *corpus delicti* rule." *United States v. Valdez-Novoa*, 780 F.3d 906, 922 (9th Cir. 2015) (citing *Lopez-Alvarez*, 970 F.2d at 591).

"[T]he *corpus deliciti* rule does not require the government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession. Rather, it requires evidence sufficient to corroborate the defendant's confession." *Id*. at 923 (citations omitted). "To satisfy the corroboration requirement, the Government 'must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently

reliable.'" *Hernandez*, 105 F.3d at 1332 (quoting *Lopez-Alvarez*, 970 F.2d at 592). "[B]ecause *corpus delicti* simply protects against convictions based on false confessions, the government need only offer evidence that 'bolster[s] the confession itself.' So, if there is 'some' independent evidence to corroborate the confession, *corpus delicti* is satisfied." *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1210 (9th Cir. 2024) (cert. pet'n filed June 29, 2024) (quoting *Valdez-Novoa*, 780 F.3d at 923; *Hernandez*, 105 F.3d at 1332). "Corroboration is a 'mixed question of law and fact that is primarily factual,' so we review it for clear error." *Id.* at 1208 (quoting *Hernandez*, 105 F.3d at 1332 (9th Cir. 1997)).[1]

Judge Berg reasonably found that Defendant's admissions to Agent Wolchko were corroborated by the testimony of Agent Miller, Agent Wolchko, and Officer Norman. Agent Miller and Agent Wolchko testified about observing Defendant walking in a remote, mountainous area two miles north of the border but far from the nearest port of entry. Agent Miller testified that the area was a common smuggling route. Agent Wolchko testified that, when he first encountered Defendant, she ran away, and he eventually discovered her in a bush, lying face down on the ground. Officer Norman testified that she queried TECS, and found no record of Defendant presenting herself at a port of entry and being allowed to enter the United States lawfully. Under either a clear error or a de novo standard of review, the Court finds that the Government introduced sufficient evidence to corroborate Defendant's admission of alienage. *See United States v. Siordia-Ibarra*, No. 20-50193, 2024 WL 1672262, at *2 (9th Cir. Apr. 18, 2024) (finding sufficient corroboration when "Siordia-Ibarra was arrested near the border where lots of illegal entries occur, was 25 miles away from the nearest port of entry, attempted to conceal himself from the view of Border Patrol agents by crawling and hiding in thick bush, and failed to produce

---

[1] Citing *United States v. Niebla-Torres*, 847 F.3d 1049, 1054 (9th Cir. 2017), Defendant contends that the Court should apply a de novo standard of review when deciding this issue. (*See* Reply Br. at 1-2, ECF No. 78.) The Court finds that it need not decide this issue, since under either standard of review, the result would be the same.

documentation to United States Border Patrol Agents") (citing *Garcia-Villegas*, 575 F.3d at 951).

### IV. In-Court Identification

Defendant contends that Agent Wolchko's in-court identification of Defendant "was made under unnecessarily suggestive circumstances" because Judge Berg "proceeded with trial where only one Hispanic woman was in the courtroom, who happened to be sitting right beside defense counsel," and Judge Berg initially stated, "you might have her pull her mask down," before telling everyone in the courtroom to lower their masks. (Appellant Opening Br. at 14, ECF No. 75.) Defendant contends that Judge Berg's initial instruction to "have her pull her mask down" "amount[s] to improper government conduct," warranting reversal. (Reply Br. at 4-5, ECF No. 78.)

"[A] due process challenge to eyewitness identifications is subject to a two-step inquiry: First, a court must decide 'whether the police used an unnecessarily suggestive identification procedure.'" *Walden v. Shinn*, 990 F.3d 1183, 1198 (9th Cir. 2021) (quoting *Perry v. New Hampshire*, 565 U.S. 228, 235 (2012)). "Second, if there was 'improper police conduct,' the court must then decide whether such police conduct 'created a substantial likelihood of misidentification.'" *Id.* (quoting *Perry*, 565 U.S. at 239). "'Reliability of the eyewitness identification is the linchpin of [this] evaluation.'" *Id.* (quoting *Perry*, 565 U.S. at 239; citing, *inter alia*, *Neil v. Biggers*, 409 U.S. 188, 198-199 (1972) (explaining that "unnecessary suggestiveness alone" does not "require[] the exclusion of evidence")).[2] Because Defendant made no objection to Agent Wolchko's in-court identification, review on appeal is for plain error. *See United States v. Baxter*, 492 F.2d 150, 170 (9th Cir. 1973) ("The Government correctly points out that no objection was

---

[2] Defendant contends that the Court should apply the factors listed in *Biggers*, 409 U.S. at 199-200. However, in *Biggers* and similar cases, the Supreme Court did not "set any guidelines for in-court identification procedures nor [did the Supreme Court] indicate[] that in-court identification must be made in a way that is not suggestive." *United States v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986). "[N]o holding of the Supreme Court nor of this circuit has mandated … a requirement" of applying the *Biggers* factors to in-court identifications. *Id.*

1  made to the in-court identification at the trial. Therefore, the question is properly before
2  this court only if the failure to exclude the identifications was a plain error or defect
3  affecting substantial rights."). By contrast, had Defendant objected and requested an in-
4  court line-up, and the request was denied, appellate review would be for abuse of
5  discretion. *See United States v. Domina*, 784 F.2d 1361, 1369 (9th Cir. 1986) ("We have
6  held that a district court's denial of a request for an in-court line-up is reviewed for an
7  abuse of discretion. An abuse of discretion occurs only if the resulting in-court
8  identification procedures are so unnecessarily suggestive and conducive to irreparable
9  misidentification' as to amount to a denial of due process of law.") (quotation omitted).

10  Defendant points to no "improper police conduct," *Perry*, 565 U.S. at 239,
11 underlying Agent Wolchko's in-court identification of Defendant. Instead, Defendant
12 relies upon what she contends is improper judicial conduct. Defendant contends that neither
13 "*Perry*, nor the Government's cases, answer the question of what to do when the judge is
14 both the judge and jury, and the judge telegraphs to the witness who to identify." (Reply
15 Br. at 5, ECF No. 78.) However, even prior to *Perry*, the Court of Appeals for the Ninth
16 Circuit held that "[t]here is no constitutional entitlement to an in-court line-up or other
17 particular methods of lessening the suggestiveness of in-court identification, such as
18 seating the defendant elsewhere in the room. These are matters within the discretion of the
19 court." *Domina*, 784 F.2d at 1369 (citation omitted). In *Perry*, the Supreme Court stated:
20 "When no improper law enforcement activity is involved, we hold, it suffices to test
21 reliability through the rights and opportunities generally designed for that purpose, notably,
22 the presence of counsel at postindictment lineups, vigorous cross-examination, protective
23 rules of evidence, and jury instructions on both the fallibility of eyewitness identification
24 and the requirement that guilt be proved beyond a reasonable doubt." *Perry*, 565 U.S. at
25 233.

26  The type of reliability testing discussed in *Perry* occurred in this case. Defendant
27 was represented by counsel, who cross-examined each of the Government's witnesses. In
28 particular, defense counsel vigorously cross-examined Agent Wolchko about his in-court

identification of Defendant, as summarized above. In making his findings, Judge Berg acknowledged the points elicited by defense counsel during cross-examination, but found Agent Wolchko to be "honest" and his testimony to be "reliable." (Tr. Trans. at 85, ECF No. 65.) Judge Berg stated that Agent Wolchko "told us on the stand what he did remember, what he did not remember." *Id*. After review of the entire record, the Court finds that the in-court identification procedures in this case were not "so unnecessarily suggestive and conducive to irreparable misidentification as to amount to a denial of due process of law." *Domina*, 784 F.2d at 1369 (quotation omitted).

The Court finds that, under either plain-error or abuse-of-discretion review, Defendant has failed to demonstrate government misconduct, or that Agent Wolchko's in-court identification of Defendant and Judge Berg's reliance on that identification otherwise violated Defendant's due process rights.

## CONCLUSION

IT IS HEREBY ORDERED that the Notice of Appeal to District Court (ECF No. 55) filed by Defendant Andrea Denise Contreras-Vergara is denied. The Judgment (ECF No. 52) is affirmed. The Clerk of the Court shall close this case.

Dated: October 3, 2024

Hon. William Q. Hayes
United States District Court